**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HYEWOONG YOON, ) | |
|     Plaintiff ) | Civil Action No.: |
| v. ) | |
| KOREAN BROADCASTING SYSTEM ) | |
|     Defendant ) | |

# COMPLAINT

## INTRODUCTION

The Plaintiff seeks an award of damages for Defendant's violation of the Massachusett's Wire Tapping Statute by recording a phone conversation with Plaintiff without his permission which was then posted on many websites, including Youtube. Plaintiff also seeks damages for Defamation.

## PARTIES

1. The Plaintiff, Hyewoong Yoon ("Mr. Yoon"), is an individual residing in Massachusetts.

2. The Defendant, Korean Broadcasting System ("KBS") has a principal place of business in South Korea at 13 Yeouigongwon-Ro, Youngdeungpo-Gu, Seoul, 150-790, South Korea. Postal Code 07235.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to

4. 28 U.S.C. §1332 as there is a diversity of Citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) as the Defendants reside in this District and a substantial part of the events giving rise to this complaint occurred in this District.

# FACTS

6. Mr. Yoon is a 22 year old college student studying in Massachusetts.

7. Seyeon Lee ("Ms. Lee") is a reporter for the Korean Broadcasting System ("KBS").

8. Mr. Yoon's father ("Yoon Sr.") is the CEO of BBQ Chicken / bb.q Chicken ("BBQ") a large chicken franchise restaurant chain in South Korea with branches all over the world, including Allston Massachusetts.

9. Mr. Yoon owns approximately 63% of BBQ's stock.

10. On or about October 25, 2019, Ms. Lee came to the United States from South Korea searching for Mr. Yoon to make a story against Mr. Yoon and Yoon Sr. Ms. Lee intended to write a story about how Yoon Sr. used BBQ's money for Mr. Yoon's education and living expenses in the U.S.

11. Ms. Lee first came to New Jersey where Mr. Yoon had lived with his guardian from when he was a child in around 2007 until approximately June 2016 after which he moved to the Boston area.

12. Ms. Lee did not find Mr. Yoon in New Jersey, but was told by his guardian of Mr. Yoon's whereabouts in Massachusetts.

13. Ms. Lee then went to Massachusetts looking for Mr. Yoon. She searched for him at the Allston branch of BBQ, which Mr. Yoon manages, but he was not there when Ms. Lee arrived.

14. Ms. Lee, who did obtain Mr. Yoon's phone number, then called Mr. Yoon while she was in Allston and Mr. Yoon was in Watertown. Ms. Lee recorded the entire conversation without Mr. Yoon's knowledge or consent.

15. During the phone conversation, Ms. Lee made statements to Mr. Yoon such as "we saw that you haven't been going to work". She also asked Mr. Yoon if he was in Boston, which Mr. Yoon said he was, and also asked "Why are you in Boston when you received a visa as an employee in New Jersey?"

16. The conversation after being recorded and saved was then broadcast as part of a video that KBS released on its website, and which was also re published on approximately 50 other websites, including Youtube. A translated copy of the transcription of the video is attached as Exhibit A. KBS has more than a million daily viewers in South Korea and is the number 1 broadcasting station there.

17. The video has remained on the above sites for approximately 3 months.

18. The video, in addition to containing the audio recording of Mr. Yoon's voice, also contained false statements about Mr. Yoon and Yoon Sr. which were made by Ms. Lee and by Mr. Yoon's former guardian, Hyunwook Joo ("Mr. Joo") who is also a former employee of BBQ who left the company after embezzling a significant amount of money and after converting funds given to him in trust for the care of Mr. Yoon.

19. The video also contained an embarrassing statement by Mr. Joo about Mr. Yoon that "His grades wouldn't improve despite his continued education overseas in the U.S. But (the CEO Yoon Sr.) kept saying that his son needed to be accepted to Harvard".

20. Mr. Joo was in fact the sole source of information that Ms. Lee relied on in producing the video.

21. The video contained false statements made by Mr. Joo and Ms. Lee including a false statement by Mr. Joo that Yoon Sr. used company money to pay for Mr. Yoon's and his Mr. Yoon's sister's education and living expenses in the U.S. Yoon Sr. had in fact used his

own personal money to pay for his son's education and living expenses. Ms. Lee failed to even do a minimal fact check, such as verifying bank statements to see where the payments were coming from, to verify Mr. Joo's statements prior to publishing the video. A series of clippings from the video are Attached as Exhibit B.

22. Within approximately 2 months from when the video was broadcasted, BBQ's revenue dropped by $62,032,975 from its average revenue in the same period prior to the broadcasting of the video. The predicted future loss through 2023 is over one billion eight hundred million ($1,800,000,000.00).

23. Mr. Yoon has suffered severe financial loss as a result of the video being published and of the phone conversation being recorded without his permission. His loss results both from his being a 63% shareholder of BBQ as well as from lost business opportunities. The video also caused him a great amount of mental distress.

24. At all relevant times, Ms. Lee was acting as an Agent of KBS and at the direction and with the help of KBS.

**COUNT I. VIOLATION OF THE WIRE TAPPING STATUTE, G.L. Ch. 272 §99(Q)**

25. KBS did not receive Mr. Yoon's permission for Ms. Lee to record the phone conversation, nor to publish it.

26. Under G.L. Ch. 272 §99(Q) (the "Wire Tapping Statute"), someone whose oral or wire communications were intercepted, disclosed, or used, or whose personal or property interests or privacy were violated by means of an interception shall have a civil cause of action against any person who so intercepts, discloses, or uses such communications or who so violates his personal, property, or privacy interest.

27. Damages under the Wire Taping Statute include:

"actual damages but not less that liquidated damages computed at the rate of $100 per day for each day of violation or $1,000.00, whichever is higher…punitive damages… and reasonable attorney's fees and other litigation disbursements reasonably incurred…"

28. The video has already been up for approximately 90 days on 50 different sites, and Mr. Yoon seeks damages in the amount of $5,000.00 per day, $100 for each site per day. To date, 89 days have passed since the video was first published on November 15, 2018, for damages of $445,000.00.

## COUNT II. DEFAMATION/DEFAMATION PER SE, LIBEL/ LIBEL PER SE, SLANDER/ SLANDER / SLANDER PER SE.

29. Ms. Lee made false statements about Mr. Yoon in the video knowing that they were false and or recklessly disregarding the truthfulness of those statements. The video was then broadcast to the public and viewed by over one million people. These acts were done at the direction and with the help of KBS.

30. After a $62,032,975 loss to BBQ, the loss to Mr. Yoon., who owns approximately 63 percent of the stock, is approximately $39,080,774.25.

## COUNT III. COMMERCIAL DISPARAGEMENT, INJURIOUS FALSEHOOD, TRADE LIBEL.

31. Ms. Lee made and published numerous false statements about Mr. Yoon's commercial character to the press and also falsely imputed that Mr. Yoon was engaged in receiving company money for his educational and living expenses. These statements were of the sort that would tend to injure a party's trade, occupation, or business. The false

statements included, but were not limited to, those described above. These acts were done at the direction and with the help of KBS.

**CONCLUSION**

32. Mr. Yoon has already incurred a loss of $39,080,774.25 and is also entitled to $450,000.00 in liquidated damages, for the video being posted for 90 days at the rate of $100.00 per day on fifty sites, as provided for in G.L. Ch. 272 §99(Q), in addition to a very high amount of potential future losses.

WHEREFORE, the Plaintiff demands the following relief:

1. Judgment against the Defendant in the amount of $39,525,774.25 with interest, costs, punitive damages, and reasonable attorney's fees plus any additional amounts that the court determines are Mr. Yoon's future damages.

2. An injunction that the video be immediately removed from all sites which have published it and that all links, sites, clips and another material containing or leading to the video or the above defamatory content be deleted.

                                  Respectfully Submitted,

                                  /s/ Joseph Perl
                                  Joseph Perl
                                  Attorney for Plaintiff
                                  B.B.O. 680509
                                  203 Arlington St., Suite 2
                                  Watertown, MA 02472
                                  781-704-7047